RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-6048

ANTHONY TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:13-cr-10041-1—J. Daniel Breen, Chief District Judge.

Argued: June 12, 2015

Decided and Filed: August 25, 2015

Before: KEITH and CLAY, Circuit Judges; MARBLEY, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** M. Dianne Smothers, FEDERAL PUBLIC DEFENDER'S OFFICE, Memphis, Tennessee, for Appellant. Victor L. Ivy, UNITED STATES ATTORNEY'S OFFICE, Jackson, Tennessee, for Appellee. **ON BRIEF:** M. Dianne Smothers, FEDERAL PUBLIC DEFENDER'S OFFICE, Memphis, Tennessee, for Appellant. Victor L. Ivy, UNITED STATES ATTORNEY'S OFFICE, Jackson, Tennessee, for Appellee.

_____

**OPINION**

_____

MARBLEY, District Judge. Defendant-Appellant, Anthony Taylor, appeals his conviction and sentence of 262 months, following a jury trial for one count of possession of a

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1

stolen firearm, in violation of 18 U.S.C. § 922(j), and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Taylor argues that: (1) the district court erred in giving a jury instruction for constructive possession of the firearm, in addition to an actual possession instruction, because the only supported legal theory at trial was one of actual possession; (2) there was insufficient evidence to convict Taylor of possession of a stolen firearm, in violation of 18 U.S.C. § 922(j); and (3) the district court's sentencing was procedurally unreasonable because the court did not explicitly discuss on the record the argument that a shorter sentence was warranted because the age at which Taylor would be released would decrease his danger to the community.

Finally, Taylor requests, as a separate matter, that this Court hold his appeal in abeyance pending a decision in *Johnson v. United States*, 135 S. Ct. 939 (2015), which, at the time in which Taylor filed his appeal, was considering whether the residual clause in the Armed Career Criminal Act of 1984, 18 U.S.C. §924(e)(2)(B)(ii) ("ACCA"), was unconstitutionally vague. Taylor contends that his prior convictions which were counted as predicate offenses for the purposes of his ACCA enhancement may no longer be predicate offenses if the Supreme Court finds the residual clause is unconstitutionally vague. The Supreme Court has since determined that the residual clause is unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015).

Since Taylor has not demonstrated that: (1) the district court abused its discretion in giving a constructive possession jury instruction; (2) there was insufficient evidence to convict him of possession of a stolen firearm; and (3) his sentence was procedurally unreasonable, this Court **AFFIRMS** the district court's decision. Additionally, the holding in *Johnson* that the residual clause is unconstitutionally vague does not affect Taylor's ACCA enhancement.

## I. BACKGROUND

### A. Factual Background

Bridget Hayden got into trouble with the law in Martin, Tennessee, and the Martin Police Department brought her in for questioning. In exchange for dismissal of her charges, she agreed to become a confidential informant to assist an investigator in conducting an undercover

investigation into felons in possession of firearms. At the trial, Hayden testified that the investigator asked her whether she knew of any firearms Taylor might have stolen or might have for sale. Hayden knew Taylor because they had attended school together. Hayden contacted Taylor, and she testified that he told her that he had two stolen pistols, as well as a shotgun. The investigator and his team wired Hayden's car with an audio transmitter, and she met with Taylor to try to purchase the guns. She was given $130.00 in controlled funds.

The first attempt was unsuccessful. Taylor took Hayden to an abandoned house and told her that the two pistols were behind it, but he returned to the car without the pistols, stating that someone was watching him, and so he would return later. Taylor then told Hayden that the shotgun was at Clyde's. Clyde is Lee Smith's nickname. Smith is Taylor's very close family friend, and a man with whom Taylor once lived.

Taylor and Hayden drove to Smith's home. Taylor went into the house, but he returned sometime later to Hayden's car without the shotgun. The two parted, and met back up two hours later, at which time they drove to Smith's home again. Taylor told Hayden that he owed Smith $30.00, so Hayden have him $30.00 of the controlled funds. Taylor entered Smith's house, and after approximately ten minutes, exited with the shotgun under his jacket, disassembled into two pieces. Taylor got into Hayden's vehicle and the two drove off.

Taylor pulled the disassembled shotgun out of his jacket and put it down between the passenger seat and the car door. The police subsequently stopped Hayden's vehicle and apprehended Taylor. Officers reported they found the shotgun between the seat and the door where Taylor had been sitting.

At the trial, Smith testified that when Taylor entered his home the second time that day, he gave Smith the $30, stating the money was in repayment for his debt. Smith explained that he told Taylor that he "would put [the money] up for him until the morning because he—I said—he said, I owe you money, Unc. I said, I know you owe me money, but I don't want your $30. I said, take that $30 and put it over the TV and you get it in the morning." Smith testified that Taylor was welcome to anything in his home, but that he did not give Taylor permission to take his shotgun that day.

That evening, the police went to Smith's home to question him about Taylor. The police asked Smith where he kept his shotgun, and he told them in his bedroom, where it no longer was located. They asked him if he saw Taylor take the shotgun, and Smith said no. He informed the police that Taylor did not have permission to take the gun. Smith confirmed that Taylor had been at his house, and that Taylor had given him $30 in repayment for a debt, which the police found on the television set. At trial, Smith confirmed that the shotgun found with Taylor upon his arrest was Smith's.

### B. Procedural Background

#### 1. Jury Instruction

During the trial, the defense objected to the district court instructing the jury on constructive possession of the firearm, arguing that the government had only presented evidence of actual possession. The government retorted that the constructive possession instruction was necessary because when Taylor was stopped, the gun was beside him in the vehicle, and not actually on his physical person. The court's initial response was to permit the constructive possession instruction to stand because at the time of Taylor's arrest "he did not physically have possession of the firearm, it was sitting beside him . . . ." The defense then argued that insofar as a requirement for constructive possession included "knowing you have the power to exercise control over the gun," the allegation that the gun had been stolen could not coexist with a theory of constructive possession, because if the gun had been stolen, Taylor "never had the power to exercise control over the gun."

Finally, the defense argued that the district court should forgo a constructive possession instruction under *United States v. James*, 819 F.2d 674 (6th Cir. 1987), which held it was reversible error to include a constructive possession jury instruction when no evidence supported that theory. The district court determined that *James* was distinguishable because in *James* there was no question that the only kind of possession at issue was actual possession. *Id*. 289. The district court further reasoned: "I'm certain that the defendant doesn't intend to argue that he wasn't in possession of it, but if you did, or wanted to infer that, I think the jury could consider constructive possession."

The district court noted that there was some question regarding whether *James* was still good law, referencing *United States v. Mari*, 47 F.3d 782 (6th Cir. 1995). The district court explained that *Mari* cited a Supreme Court case, *U.S. v. Griffin*, 502 U.S. 46 (1991), which held that where a jury is instructed that a defendant may be found guilty on a factual theory that is not supported by the evidence, and is charged with a factual theory that is so supported, and the only claimed error is the lack of evidence to support the first theory, the error is harmless as a matter of law. *See Mari*, 47 F.3d at 786. Accordingly, the district court permitted the constructive possession instruction to be given to the jury.

### 2. *Motion for Judgment of Acquittal*

During trial, at the close of the government's case in chief, which was also the close of all evidence, the defense moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The defense argued that the evidence adduced did not show that Taylor possessed the shotgun knowing it was stolen. The district court denied the motion.

### 3. *Sentencing*

The presentence report ("PSR") found that Mr. Taylor qualified for armed career criminal status based on four, prior violent felonies[1] within the meaning of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"). Consequently, his total offense level was 34. His criminal history category was VI. With a total offense level of 34 and a criminal history category of VI, the Guidelines' imprisonment range was 262 to 327 months.

Taylor's Position Paper in response to the PSR did not raise the age-recidivism objection at issue. Instead, in the Position Paper, Taylor maintained his contention at trial that he did not steal or possess the firearm in question, objected to sentencing enhancements pursuant to the ACCA, and included mitigating personal characteristics such as blindness in one eye, little education, and learning disabilities. The Position Paper also included a request that Taylor be placed in a medical facility.

---

[1]The PSR includes the following four, prior convictions for violent felonies which qualify Taylor for his status as an armed career criminal under the ACCA: 1987 conviction for armed third degree burglary in Tennessee, 1992 conviction for robbery in Tennessee, 1996 conviction for robbery in Tennessee, and 2002 conviction for burglary in the first degree in Kentucky.

Defense raised the age-recidivism objection at the beginning of the sentencing hearing in support of its request for the statutory minimum sentence of 180 months:

We are asking Your Honor to vary somewhat, most specifically in light of his multiple serious medical situations.  He has one eye.  He has lost the vision in his other eye as a small child because of an assault that an adult committed on him. He has other serious medical problems . . . because of his age, the other problems he has, but most specifically his eye, I think he's more at risk of an injury or of a permanent disabling situation. . . .  We're asking your Honor to sentence him to the statutory minimum of 180 months.  We understand the guidelines put him above that, simply by virtue of having proceeded to trial…However, it's our position that a sentence of 180 months for someone in Mr. Taylor's age, his medical condition.  Your honor sees his criminal history there.  It's not the best history.  He does have a fairly extensive criminal history.  *But nevertheless, the age at which he would return to the community would be such that I think the danger to the community would be satisfied by a sentence of 180 months . . . I think it would adequately protect the community. . . .*  We're also asking Your Honor to recommend a placement facility . . . And I know the history is there; we have to deal with it. But it's a significant sentence in any court and for any defendant, certainly someone of his age.

The government responded that the sentence was warranted because of Taylor's significant criminal history.

Thereafter, most of the hearing was consumed with defense counsel's arguments relating to whether Taylor's prior convictions qualified him as an armed career criminal.  At the conclusion of arguments, the district court reiterated all of Taylor's objections, including the objections to the gun having been stolen, and objections to an upward variance under the ACCA, and ruled on those objections.  The district court then asked defense counsel if she had other objections that the court may have "overlooked."  She replied, "No, sir, Your Honor.  Just our request, obviously, for placement."  Likewise, the court asked counsel for the government if he had anything else to add, at which time he reminded the court that the jury found Taylor guilty of possessing a stolen firearm, which should enhance the Guidelines range.  The court then gave the defense another opportunity to speak, stating, "Was there anything else, Ms. Smothers," to which she responded, "no."

At that point, the court went through the Guidelines, and determined that the advisory range for the defendant, based on his past convictions and convictions in this case, would be

between 262 and 327 months. Then, the court considered the nature and circumstances of the offense, as well as the history and characteristics of the defendant, pursuant to 18 U.S.C. § 3553(a). First, the court considered the nature of the offense, finding that it was:

> [a] serious matter on a couple of levels. One being that Mr. Taylor was, as a convicted felon, on several occasions in possession of a firearm. And, secondly, that it was in his possession by reason of a robbery or burglary. And, obviously, Congress has seen fit to prohibit felons from possessing firearms. Which is evidence in this case, based upon Mr. Taylor's previous record, many of which had been violent activity in possession of a firearm. And doubly so because it was as a result of a robbery or burglary.

Next, the district court considered Taylor's personal characteristics, noting his abuse as a child, borderline mental retardation, blindness in one eye, and his other medical issues. The district court stressed, however, that it had to "consider a sentence that would reflect the seriousness of this offense" in order to promote respect of the law, and provide punishment for the offense. Further, the district court found it had to consider a sentence "to act as a deterrent effect. To send a message to Mr. Taylor, as well as others, that this conduct is to be avoided." Further, the district court considered that the sentence must "protect the public from further crimes of the defendant. Because of Mr. Taylor's extensive criminal history, the court believes that a sentence that would be commensurate with that history should be imposed." Thus, the court found a sentence within the advisory guidelines range was appropriate, and sentenced Taylor to 262 months, at the lowest end of the Guidelines, as enhanced by the ACCA.

When the court asked the *Bostic* question, "any other objections as far as sentencing, or any other matters I failed to address on behalf of the defendant," defense counsel replied, "No. Just housekeeping. We just reiterate our earlier objections."

## III. DISCUSSION

Taylor raises three arguments on appeal: (1) the district court abused its discretion in giving a jury instruction for constructive possession, in addition to actual possession, when only actual possession had been established; (2) there was insufficient evidence to convict him of possession of a stolen firearm in violation of 18 U.S.C. § 922(j); and, (3) his sentence is procedurally unreasonable because the district court failed explicitly to address his argument that the community's safety interests would be served by his release at age 60. In addition, Taylor

asks this Court to consider holding his appeal in abeyance pending the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 939 (2015), where the parties have been ordered to provide supplemental briefing on whether the ACCA's residual clause is unconstitutionally vague. The Supreme Court has since ruled on the issue, holding that the residual clause is unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551 (2015).

## A.  Constructive Possession Jury Instruction

### *1.  Standard of Review*

We review a district court's choice of jury instructions for abuse of discretion. *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007). We may reverse a judgment based on improper jury instructions "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Svoboda*, 633 F.3d 479, 483 (6th Cir. 2011). In reviewing the instructions, we consider whether they "adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *Id.*

### *2.  Analysis*

Taylor argues that the district court erred in giving the jury an instruction for constructive possession of the shotgun because the only type of possession that the evidence supported was actual possession of the shotgun.

It is well established that boilerplate instructions "should not be used without careful consideration being given to their applicability to the facts and theories of the specific case being tried." *United States v. Hughes*, 134 F. App'x 72, 76-77 (6th Cir. 2005) (quoting *United States v. Wolak*, 923 F.2d 1193, 1198 (6th Cir. 1991)). Throughout trial, the government's witnesses testified that Taylor actually possessed Smith's shotgun. At the end of trial, however, the district court determined that a constructive possession instruction should be given, in addition to an actual possession instruction, due to testimony showing that when the officers apprehended Taylor in Hayden's car, the shotgun was not on Taylor's physical person, but was found, instead, at arm's length on the floorboards between his seat and the door of the vehicle. Neither party contests that there is no other evidence to suggest that at any time when Taylor did not physically

possess the shotgun, or have it directly next to him in the car, he had constructive possession of the shotgun.  Further, no evidence exists on the record of Taylor possessing, either constructively or actually, a firearm other than Smith's shotgun.

The district court's determination that such facts warranted a constructive possession instruction, therefore, was in error.  As explained in *United States v. Gardner*, "[c]onstructive possession exists when a person does not have possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."  488 F.3d 700, 713 (6th Cir. 2007).  In contrast, actual possession exists "where the defendant has physical contact with a firearm-e.g., he holds it, holsters it, or keeps it in a place where it is immediately accessible."  *Id.*  Thus, when Taylor put down his shotgun on the floor board next to him, but the shotgun was immediately accessible to him, the gun was still in Taylor's actual possession, not his constructive possession, within the legal meaning of that term.

Accordingly, the district court should not have instructed the jury on constructive possession; the court's error, however, does not require reversal of an otherwise valid conviction. *See Griffin v. United States*, 502 U.S. at 60 (holding that refusal to remove an insufficiently supported theory from the jury's consideration does not provide an independent basis for reversing an otherwise valid conviction).  "Where one of two grounds for conviction is unsupported by the evidence and sufficient evidence supports the other ground for conviction, an error claimed as to the unsupported charge is harmless as a matter of law."  *Hughes*, 134 F. App'x at 77 (citing *United States v. Mari*, 47 F.3d 782, 786 (6th Cir. 1995)).  Further, courts can assume that jurors are able to analyze the evidence and discard factually inadequate theories. *Mari*, 47 F.3d at 786.

Taylor argues that the rule in *Mari* and *Griffin* applies only where there is an absence of anything in the record to support the constructive possession theory.  In contrast, in this case, Taylor avers that the jury could have found him guilty based on the inadequate legal theory of constructive possession because he momentarily laid the shotgun on the floorboards between his seat and the door of the vehicle during the traffic stop.  Contrary to Taylor's assertion, however, this is a case to which the rule in *Mari* perfectly applies because the only evidence which could

have been construed to support a constructive possession theory, in reality, supported an actual possession theory.

Thus, this case is analogous to *Smith*, *Hughes*, and *Bowman*, where this Court found that giving an unwarranted constructive possession instruction, in addition to a supported actual possession instruction, amounted only to harmless error where facts in evidence could not have led the jury to discard an actual possession theory while instead returning an unsupported conviction for constructive possession. *See United States v. Smith*, 419 F. App'x 619, 620-22 (6th Cir. 2011) (finding harmless error in giving a constructive possession jury instruction because: the government's only theory was that the defendant actually possessed a gun upon arrest; the defendant's theory was that the police returned to his home after his arrest and found a gun there that did not belong to him; and, the defendant's theory, which was the basis of the constructive possession jury instruction, did not support a theory of constructive possession, but only that the gun did not belong to the defendant); *Hughes*, 134 F. App'x. at 76-77 (finding harmless error in giving a constructive possession instruction where: no record evidence supported a theory of constructive possession; both parties agreed defendant actually possessed ammunition; no evidence suggested that at any time when the defendant did not possess ammunition, she had effective control of it; and, the district court only wrongfully gave constructive possession instruction because there was testimony that the ammunition in the defendant's actual possession really belonged to someone else); *United States v. Bowman*, 126 F. App'x 251, 254-55 (6th Cir. 2005) (finding constructive possession instruction was harmless error because: neither the defendant nor the government suggested that the defendant had constructive possession of the gun police found on the ground; the officer testified that he saw the defendant, while running from police, throw a gun on the ground; and, although the defendant admitted he owned a gun, the prosecutor never argued that the defendant should be convicted for possession of a gun other than the one found on the ground that the officer saw the defendant discard).

As stated, *supra*, the only possible evidence on the record which could have been construed to support a jury instruction for constructive possession was that when the police apprehended Taylor, the shotgun was on the floor next to him, and not on his physical person;

such facts do not, however, warrant a constructive possession instruction, but, instead, constitute evidence supporting an actual possession instruction. Thus, there is no question that the only evidence offered at trial was of actual possession, and this Court can assume that the jury convicted Taylor only on a theory of actual possession, regardless of the instructions given. *See Hughes*, 134 F. App'x. at 77; *Smith*, 419 F. App'x at 620-22; *Bowman*, 126 F. App'x at 254-55. Accordingly, the district court's constructive possession instruction was harmless as a matter of law.

Finally, Taylor argues harmless error should not apply in this case because it gives an incentive to district courts to be over-inclusive with jury instructions regardless of the theory of possession presented, which hampers the incentive for careful consideration of the facts and theories of the specific case being tried. Such an argument is inappropriate in the case *sub judice*, where the district court showed a reasoned consideration of facts which it believed supported a constructive possession instruction. In light of the minute-to-minute legal determinations that a district court must make during a jury trial, it cannot be said that the district court's harmless legal error was a result of lackadaisical consideration of the facts of the case.

## B. Sufficiency of the Evidence

### *1. Standard*

We review Taylor's motion for judgment of acquittal *de novo*. *United States v. Kone*, 307 F.3d 430, 433 (6th Cir. 2002) (citing *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996)). Evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (citing *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)). "[W]e will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *Id.* (citation omitted). While "we do not weigh the evidence" or "assess the credibility of the witnesses," our "power of review in these cases is not toothless." *Id.* at 439. Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is

evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* (citing *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967)).

## *2. Analysis*

Taylor contends that no rational trier of fact could have found him guilty of being in possession of a stolen firearm. The elements required to establish the receipt or possession of a stolen firearm under 18 U.S.C. § 922(j) are: "1) the receipt or possession of stolen firearms; 2) which moved or were shipped in interstate commerce before or after being stolen; and 3) knowledge or reasonable cause to believe that they were stolen." *United States v. Roalin*, 62 F. App'x 594, 595 (6th Cir. 2003). Taylor argues that the evidence adduced at trial showed that he did not steal Smith's shotgun, but, instead, acted as a broker in the sale of his gun to Hayden. Accordingly, Taylor argues there is insufficient evidence to show he possessed a stolen gun, or that he had knowledge or any reasonable cause to believe the firearm was stolen.

Taylor asserts that the facts adduced at trial establish only that he took Hayden to Smith's home to retrieve a shotgun that he sold to her for a down payment of $30.00; that he owed Smith $30.00; that he went into the house for ten minutes and returned to Hayden's vehicle with a shotgun; and that Taylor gave Smith the $30.00 when he entered the house, which was on top of the television set when the police entered the home the next morning. Taylor contends that Smith only reported his gun was missing after three police officers questioned him at his home regarding the whereabouts of his gun. Taylor speculates that the more likely story is that Smith panicked when the officers arrived at his house and questioned him about his gun because he likely thought he might be in trouble for using Taylor to broker the sale of his gun. Finally, Taylor argues that the fact that the $30.00 was on the television shows Taylor paid Smith for the shotgun.

The following evidence demonstrates that the district court did not err when it denied Taylor's motion for judgment of acquittal: Smith's testimony that he always maintained his shotgun in his closet, and that it was missing on the evening the police came to question him; Smith's testimony that the shotgun found in Hayden's car when the police apprehended Taylor was the same shotgun that Smith testified was missing from his home; Smith's testimony that

Taylor had given him the $30.00 in repayment for a $30.00 debt; and, Smith's testimony that he did not see Taylor take the gun, and that Taylor did not have permission to take his shotgun.

Taylor did not testify at trial. Additionally, it is uncontroverted that Hayden did not go inside Smith's home, so she could not have known if Taylor bought or stole the gun. Thus, in order to find Taylor guilty of possession of a stolen firearm, the jury only could have relied on Smith's testimony that he had not consented to sell his gun via Taylor, that he had received the $30.00 from Taylor reluctantly in payment of a debt, and not in exchange for the shotgun, and that Taylor took his gun without his permission. In sum, Taylor's argument can be reduced to an attack on Smith's credibility as a witness. Attacks on witness credibility, however, "are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999). As the *Gibbs* court concluded, "[a]lthough testimony from one eyewitness is spare, the quality of the evidence is a factual matter for the jury to evaluate." *Id*. Although the government's case ultimately depended on a single witness' testimony, the jury was within its right to evaluate and credit Smith's testimony that Taylor stole his gun.

In light of the foregoing, when viewing the evidence in the light most favorable to the government, this Court finds that *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Grubbs*, 506 F.3d at 438.

### C. Reasonableness of Taylor's Sentence

#### 1. Standard of Review

Post-*United States v. Booker*, 543 U.S. 220 (2005), this Court reviews a district court's sentencing determination under a deferential abuse-of-discretion standard for reasonableness. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). "Sentences in criminal cases are reviewed for both procedural and substantive reasonableness." *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012) (citing *Gall*, 552 U.S. at 51). Taylor challenges only the procedural reasonableness of his sentence.

The determination of which standard of review applies to a defendant's challenge to the procedural reasonableness of a sentence depends on whether the defendant preserved that

challenge for appeal by making a clear objection. *United States v. Richards*, 593 F. App'x 500, 503 (6th Cir. 2014). The court reviews preserved procedural-reasonableness claims for abuse of discretion. *Id.* Pursuant to *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), where a party has failed to object to a procedural defect at sentencing, including a procedural defect in the district court's § 3553 analysis, we review claims of procedural unreasonableness for plain error. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) (citing *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (*en banc*)). Under *Bostic*:

> a district court must "ask the parties whether they have any objections to the sentence ... that have not previously been raised." *Id.* The purpose of the *Bostic* question is twofold: to allow parties a chance to raise objections not previously raised, *United States v. Freeman*, 640 F.3d 180, 186 (6th Cir.2011), and, critically, to allow the district court an opportunity to address and "correct[ ] any error ... on the spot." *Bostic*, 371 F.3d at 873. Accordingly, in general, defendants can preserve challenges to the procedural reasonableness of their sentence when: (1) the district court addresses a procedural-reasonableness claim the defendant raised prior to asking the *Bostic* question; or (2) the district court addresses a procedural-reasonableness claim after asking the *Bostic* question—in this scenario, the claim could be one raised for the first time after the district court asks the *Bostic* question, or it could be a previously developed claim that the district court failed to address prior to asking the *Bostic* question. *See United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir.2008) (en banc); *United States v. Simmons*, 587 F.3d 348, 354–55 (6th Cir.2009). When determining whether a party has adequately preserved a claim for appeal, this court examines the record "with an eye to the realities of the facts and circumstances of each sentencing proceeding." *United States v. Morgan*, 687 F.3d 688, 694 (6th Cir.2012) (internal citation and quotation marks omitted).

*Richards*, 593 F. App'x at 503. In contrast, "[u]nlike with a procedural-reasonableness claim, a defendant is not required to preserve a substantive-reasonableness claim for appellate review. . . . Accordingly, all challenges to the substantive reasonableness of a sentence are reviewed for abuse of discretion." *Id.* at 504 (citations omitted).

The government argues plain error applies because Taylor did not object to the district court's failure to address his age-recidivism mitigation argument at the close of the sentencing hearing. Taylor responds that under the rationale in *Bostic*, he was not required to reiterate his age-recidivism argument at the close of the sentencing hearing in order to avoid plain error review. *See United States v. Freeman*, 640 F.3d 180, 186 (6th Cir. 2011) (finding "the purpose

of the *Bostic* question is to allow the parties to raise objections 'that have not previously been raised,'" not to give parties an opportunity to renew their previously raised objections).

Taylor is correct, in part, that *Bostic* does not require a defendant to reiterate a procedural objection, previously raised, to preserve it for appeal under abuse-of-discretion review; nor does the law require a defendant to raise a substantive objection at all to receive abuse-of-discretion review on appeal. Under *Vonner*, however, the law is well-settled that a defendant's failure to object to the adequacy of a district court's explanation for rejecting some of his requests for leniency previously raised—"an issue that became apparent as soon as the court finished announcing its proposed sentence"—triggers plain error review under *Bostic*. *Vonner*, 516 F.3d at 386. In this case, Taylor argues that the district court committed a procedural error by failing to address explicitly his previously raised age-recidivism argument during sentencing. The district judge, however, inquired after sentencing as to whether Taylor had any "any other objections as far as sentencing, or any other matters I failed to address on behalf of the defendant," and Taylor did not respond with any new objections not previously raised regarding procedural defects in the district court's sentencing decision stated a few moments before. Thus, Taylor's challenge to the procedural reasonableness of the district court's sentencing decision is subject to plain error review.

To demonstrate plain error, a defendant must show: "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Wallace*, 597 at 802 (citing *Vonner*, 516 F.3d at 386).

### 2. *Analysis*

Taylor argues that the district court's sentence was procedurally unreasonable because the sentencing record shows that the court did not discuss explicitly Taylor's mitigation argument that his advanced age upon his release would be sufficient to protect the public from any further crimes, thus weighing in favor of a downward departure.

At the highest level, procedural reasonableness requires that a district court "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and

adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (quotation marks omitted). In order for a district court's sentencing determination to be procedurally reasonable, a "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (quoting *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007)); *see also Vonner*, 516 F.3d at 387 (the question regarding procedural reasonableness in each case "is whether '[t]he record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him") (quoting *Rita*, 127 S.Ct. at 2469, 127 S.Ct. 2456) (alteration in original); *Wallace*, 597 F.3d at 804. While, on the one hand, the district court is not required to "give the reasons for rejecting any and all arguments [made] by the parties for alternative sentences," *Vonner*, 516 F.3d at *387*, on the other hand, when a defendant raises a "non-frivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Gapinski*, 561 F.3d at 474 (quoting *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (internal quotation marks omitted)); *see also Rita,* 127 S.Ct. at 2467*,* 127 S.Ct. 2456; *United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) ("When the defendant or prosecutor 'presents nonfrivolous reasons for imposing a different sentence,' . . . a sentencing judge should address the 'parties' arguments' and 'explain why he has rejected those arguments.'"). Further, the Supreme Court in *Rita* suggested that "[w]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation…" *Vonner*, 516 F.3d at 387 (citing *Rita*, 127 S.Ct. at 2468).

While the district court judge in this case did not make even a cursory mention of Taylor's age-recidivism argument, this Court cannot conclude that the sentencing was procedurally unreasonable. Taylor did not raise the objection with a sufficient degree of specificity under the circumstances to apprise the court of the true basis for his objection. *Bostic*, 371 F.3d at 871 (a party "must 'object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection'") (quoting *United*

*States v. LeBlanc,* 612 F.2d 1012, 1014 (6th Cir.)); *see also* Fed.R.Crim.P. 51(b). As explained in *Bostic*, "[a] specific objection provides the district court with an opportunity to address the error in the first instance and allows this court to engage in more meaningful review." *Id.*

The one and only time Taylor raised his age-recidivism argument, it was in a fleeting manner, and buried within a series of interrelated objections concerning his personal characteristics, including his age, disabilities, and request for placement in a medical facility. In the briefs before this Court, Taylor fleshes out policy and legal arguments concerning the correlation between increased age and lower recidivism rates, including citation to academic and statistical findings; such supporting legal and policy rationales, however, were not before the district court. While an argument for leniency based on lower recidivism rates for older prior offenders certainly is not frivolous, *see Payton v. United States*, 754 F.3d 375, 377 (6th Cir. 2014), neither is it so well established in our jurisprudence that it can be said with certainty that a brief reference to it, without any supporting argument, would adequately apprise the court of its import. Further, of some consideration is the fact that Taylor's written objections to the PSR did not raise the age-recidivism objection. This is not to say that placing an objection in a response to a PSR is necessary in order to make an objection with a reasonable degree of specificity. In this case, however, in combination with the fleeting and inexplicit nature of the comment at the sentencing hearing, it provides support for the conclusion that such an objection was not stated with a reasonable degree of specificity to put the district court on notice of it. We must conclude, in sum, that the objection as raised did not apprise the court of its responsibility to resolve it explicitly within the sentencing hearing.

Although the district court did not refer to Taylor's age-recidivism argument explicitly when it denied a downward departure, the district court did consider Taylor's personal characteristics, and set forth a sufficient explanation for Taylor's within-Guidelines sentence. In weighing Taylor's personal characteristics against other §3553(a) factors, the district court found that the other factors weighed against deviating below the minimum Guidelines range, including: the seriousness of Taylor's crime, his criminal history, protection of the community, and the deterrent effect of the sentence both on Taylor, as well as on others. Taylor's age-recidivism argument is, essentially, that the community's interest in safety, a factor to be considered under

§ 3553(a), still would be served by a below-Guidelines sentence because he is less likely to offend as he ages.  The transcript shows implicitly, though not explicitly, however, that the district court concluded that the community's interest in safety and deterrence would not be served by granting Taylor a shorter sentence.  While the Supreme Court and this Court "encourage[] district court judges to give 'reasoned' explanation for all sentencing decisions . . . '[t]he law leaves much, in this respect, to the judge's own professional judgment.'" *Vonner*, 516 F.3d at 387 (citing *Rita*, 127 S.Ct. at 2468).  In this case, the court provided a reasoned explanation for its sentence.

This is not to say that Taylor's age-recidivism argument would be frivolous under different circumstances.  On the contrary, this decision does not undermine the continuous vitality and validity of *Payton v. USA*, where this Court found that it was procedurally unreasonable for the district court to fail to address on the record its consideration of the defendant's age-recidivism argument in favor of a shorter sentence.  754 F.3d at 377.  The *Payton* court concluded that statistical evidence[2] showing a decline in recidivism with age required "the sentencing judge to explain carefully why a criminal defendant like Payton remains likely to engage in violent robberies between the age of seventy and ninety." *Id*. at 379. Accordingly, the *Payton* Court held that a complete failure to provide any rationale as to why the district court rejected such an argument warranted a remand.  *Id*.  Thus, as with any non-

---

[2]The *Payton* Court included the following statistical and scientific evidence in its decision:

The Sentencing Commission has observed that "[r]ecidivism rates decline relatively consistently as age increases."[1] Recent analysis from the Bureau of Justice Statistics considering the recidivism rates of released prisoners in 30 states (including Michigan) from 2005 to 2010 supported the Commission's conclusion, finding decreased recidivism rates as prisoners age.[2] These statistics suggest that past fifty years old there is a significantly lower rate of recidivism.[3] Both the Guidelines and our Circuit's cases explicitly acknowledge that a defendant's age, and specifically old age, is a relevant consideration in sentencing.  U.S.S.G. § 5H1.1; *United States v. Berry*, 565 F.3d 332, 341 (6th Cir.2009); *United States v. Davis*, 537 F.3d 611, 616–17 (6th Cir.2008). And observers of the criminal justice system have long acknowledged the "key" argument "that elderly offenders pose so low a risk to the public that long or otherwise harsh sentences have little to no utilitarian benefit."[4] Indeed, they observe that "because of health or other reasons, elderly offenders have the lowest rate of recidivism of all types of offenders; in fact, only about one percent of elderly offenders ever face a second conviction." *Id.*  Studies indicate that neurotransmitters affecting aggression supplied at the synapses of brain neurons vary based on age, and may explain the observed decline in recidivism among older prisoners.

*Id*. at 378-79.

frivolous mitigation argument, a district court is under an obligation to articulate its rationale for accepting or rejecting an age-recidivism argument in favor of a lower sentence.

Under the circumstances of this case, however, we hold that the sentencing procedure was not unreasonable, and thus the district court did not commit plain error by failing to discuss explicitly Taylor's statement that he would pose a lesser threat to the community at age 60.

### D.  Request to Hold the Appeal in Abeyance

In his reply brief and a letter submitted to this Court on April 10, 2015, Taylor urged this Court to hold his appeal in abeyance in light of the Supreme Court's February 18, 2015 request in *Johnson v. United States*, 135 S. Ct. 939 (2015) for parties to file supplemental briefs addressing the following question:  "Whether the residual clause in the Armed Career Criminal Act of 1984, 18 U.S.C. §924(e)(2)(B)(ii),[3] is unconstitutionally vague."  On June 26, 2015, after the completion of oral arguments in this case, the Supreme Court issued an opinion in *Johnson*, holding that the residual clause is unconstitutionally vague, and, thus, that imposing an increased sentence under the residual clause violates the Constitution's guarantee of due process.  *Johnson v. United States*, 135 S. Ct. 2551 (2015).  The Supreme Court's decision, however, did "not call into question application of the [ACCA] to the four enumerated offenses [preceding the residual clause], or the remainder of the Act's definition of a violent felony."  *Id.* at 2563.

Taylor submits that his two prior convictions for simple robbery in Tennessee, and his conviction for pre-1989 third degree burglary in Tennessee, have been found by this Court to be

---

[3]"Under the ACCA, a defendant who violates 18 U.S.C. § 922(g) and has three prior convictions for serious drug offenses or violent felonies must receive a fifteen-year mandatory minimum sentence." *United States v. Johnson,* 707 F.3d 655, 658 (6th Cir.2013) (citing 18 U.S.C. § 924(e)(1)). The ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).  We refer to § 924(e)(2)(B)(i) as the "use of physical force" clause and the italicized portion of § 924(e)(2)(B)(ii) following the enumerated offenses as the "residual clause."  *See United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir.) *cert. denied*, 135 S. Ct. 158, 190 L. Ed. 2d 115 (2014).

ACCA predicate offenses under the residual clause.[4]   Thus, he argued that the then-pending Supreme Court decision in *Johnson v. United States* gave this Court good reason to hold his appeal in abeyance.  Now that the Supreme Court has indeed found the residual clause to be unconstitutionally vague, we must consider what effect, if any, that change in the law has on Taylor's upward enhancement pursuant to the ACCA.

Taylor did not raise on direct appeal any objections to his classification as an armed career criminal under the ACCA.  He did, however, raise some objections to his classification as an armed career criminal in its Position Paper in response to the PSR.  Specifically, Taylor objected to the application of his two Tennessee simple robbery convictions as qualifying convictions for ACCA purposes, arguing that the Tennessee statute was non-generic, overly broad, and indivisible, in that it could be violated simply by placing a person in fear, which might not necessarily entail violence.[5]   As Taylor acknowledged, this argument has been foreclosed by this Court in *United States v. Mitchell*, which is why he did not raise it on appeal. 743 F.3d 1054 (6th Cir.) *cert. denied*, 135 S. Ct. 158, 190 L. Ed. 2d 115 (2014). Further, Taylor states that he never raised the argument that the ACCA's residual clause was void for vagueness, and thus could not form the basis for a finding that Tennessee simple robbery is a violent felony under the ACCA, because that argument was foreclosed in *United States v. Taylor*, 696 F.3d 628, 633 (6th Cir. 2012).  He argues, now, that a holding in *Johnson* finding the residual clause unconstitutionally vague might entail that Tennessee simple robbery no longer qualifies as a predicate offense under the ACCA.  We conclude that even though the Supreme Court struck down the residual clause, our holding in *Mitchell* stands.

---

[4]The PSR includes the following four, prior convictions for violent felonies which warrant Taylor's status as an Armed Career Criminal:  The PSR includes the following four, prior convictions for violent felonies which qualify Taylor for his status as an armed career criminal under the ACCA:  1987 conviction for armed third degree burglary in Tennessee, 1992 conviction for robbery in Tennessee, 1996 conviction for robbery in Tennessee, and 2002 conviction for burglary in the first degree in Kentucky.  In Taylor's reply brief, he argues that his two prior convictions for simply robbery in Tennessee are not crimes of violence.  In his objections to the PSR, he argues that one conviction for simple robbery in Tennessee, and one conviction for first degree burglary in Kentucky, are not crimes of violence.  Then, in a letter submitted pursuant to FRAP 28(j), he states that his sentence should not have been enhanced under the ACCA based upon convictions for simply robbery under Tennessee law and Tennessee's third degree robbery statute in 1982.  This Court will address all four convictions.

[5]"In 1988, Tennessee law defined robbery as 'the felonious and forcible taking from the person of another, goods or money of any value, by violence or putting the person in fear.'  Tenn. Code Ann. § 39–2–501(a) (1982) (repealed).  The version in effect in 2003 differed only slightly, defining robbery as the 'intentional or knowing theft of property from the person of another by violence or putting the person in fear.'  Tenn. Code Ann. § 39–13–401." *Mitchell*, 743 F.3d at 1058.

In *Mitchell*, this Court rejected the defendant's argument that the Tennessee robbery statute is indivisible and overly broad, finding, instead, that it was divisible and not overly broad, because the language " 'by violence . . . or putting in fear,' enunciate two alternative elements." *Id*. at 1063-66. Thus, Taylor's argument that the Tennessee robbery statute is non-generic, overly broad, and indivisible, has been entirely foreclosed by *Mitchell*. Further, this inquiry is not reopened by the unrelated holding under *Johnson* that the residual clause is unconstitutionally vague, as the two holdings have nothing to do with one another.

The *Mitchell* Court concluded, further, that:

[a]lthough the Tennessee robbery statutes are divisible, we need not defer to the modified categorical approach to determine which alternative formed the basis of Mitchell's prior conviction. As already discussed, neither alternative element departs from the definitions provided in the 'use of physical force' clause or the residual clause.

*Id*. at 1066. Indeed, earlier in the decision, the *Mitchell* Court had concluded that under the categorical approach, simple robbery in Tennessee was a violent felony under the "use of physical force clause" *and* the residual clause. In terms of the "use of physical force clause," the Court found that "the commission of a robbery through fear, which in Tennessee reduces to the fear of bodily injury from physical force offered or impending, directly corresponds to § 924(e)(2)(B)(i)'s 'use ... or threatened use of physical force.'" *Id*. at 1059. In terms of the residual clause, under the categorical approach, the Court found that robbery in Tennessee presented a risk of physical injury, as it was a lesser included offense than larceny, which this Court had already concluded posed a serious risk of injury to others. *Id*. at 1060. Further, the Court found that robbery required intentional conduct, and compared favorably with the offense of generic burglary in the enumerated clause, or first clause of § 924(e)(2)(B)(ii). *Id*. at 1062.

Thus, the *Mitchell* Court found that Tennessee simple robbery is a violent crime under both the "use of physical force clause" and the residual clause. The crime need only qualify as a violent felony under one of the clauses. Accordingly, the Supreme Court's holding in *Johnson* leaves unaffected this Court's determination that simple robbery in Tennessee is a predicate offense under "the use of physical force" clause.

Next, this Court will determine whether the holding in *Johnson* affects whether Taylor's 2002 conviction for first degree burglary in Kentucky qualifies as a predicate violent felony under the ACCA. It does not. In *U.S. v. Jenkins*, this Court found that second degree burglary in Kentucky[6] is a violent felony under the enumerated offenses clause in § 924(e)(2)(B)(ii), and, thus, found it did not need to rely on the residual clause to determine if second degree burglary was a predicate offense. 528 F. App'x 483, 484-85 (6th Cir.) *cert. denied sub nom. Jahns v. United States*, 134 S. Ct. 455, 187 L. Ed. 2d 304 (2013) and *cert. denied*, 134 S. Ct. 488, 187 L. Ed. 2d 330 (2013). Thus, first degree burglary[7], which encompasses the same definition as second degree burglary, but is enhanced because the offender is armed, injures another, or threatens to use a dangerous instrument against another, is a predicate offense under the ACCA. In sum, the holding in *Johnson* does not disrupt the conclusion, pursuant to *Jenkins*, that first degree burglary in Kentucky is a predicate offense under the "enumerated offenses" clause of the ACCA.

Finally, this Court will determine whether *Johnson* affects whether Taylor's 1987 conviction for third degree burglary in Tennessee qualifies as a predicate violent felony under the ACCA. We are not required to do so, however, since it has already been determined, *supra*, that Taylor has three predicate offenses for ACCA purposes which *Johnson* does not affect.

Taylor argues that in *United States v. Bureau*, 52 F.3d 584, 591 (6th Cir. 1995), this Court determined that pre-1989 third degree burglary in Tennessee[8] is a violent felony under the residual clause. That case is inapposite, however, because it determined that *attempted* pre-1989 third degree burglary in Tennessee was a violent felony under the residual clause.

---

[6]"A person is guilty of burglary in the second degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling." Ky. Rev. Stat. § 511.030.

[7]"(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or (b) Causes physical injury to any person who is not a participant in the crime; or (c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime." Ky. Rev. Stat. Ann. § 511.020.

[8]Pre-1989, burglary in the third-degree in Tennessee was defined as: "the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony." Tenn. Code Ann. § 39-904.

In *United States v. Caruthers*, this Court found that third degree burglary under the pre-1989 Tennessee statute was "generic" burglary under the ACCA's enumerated clause because: (1) the case law showed that the statute did in fact require unlawful entry; and, (2) so long as the indictment shows that the defendant broke and entered into an actual building, the crime committed is a generic burglary under the ACCA. 458 F.3d 459, 474-76 (6th Cir. 2006). In the case *sub judice*, the PSR indicates that Taylor's 1982 conviction for burglary in the third degree resulted from him breaking into a store. Under *Caruthers*, therefore, Taylor's 1987 conviction qualifies as a generic burglary under the "enumerated offenses" clause. Accordingly, *Johnson* leaves unaffected Taylor's ACCA enhancement based on his 1987 conviction for burglary in the third degree under Tennessee law.

## IV. CONCLUSION

Since Taylor has not demonstrated: (1) the district court abused its discretion in giving a constructive possession jury instruction; (2) there was insufficient evidence to convict him of possession of a stolen firearm; and (3) his sentence was procedurally unreasonable, this Court **AFFIRMS** the district court's conviction and sentence. Additionally, this Court holds that the Supreme Court's recent decision in *Johnson v. United States* does not impact Taylor's sentencing enhancement under the ACCA.