NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0204n.06

No. 24-1159

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 17, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| ROCKY LELAND PARKER, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
|  | ) ) | |

Before: SUTTON, Chief Judge; SILER and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Defendant-Appellant Rocky Leland Parker ("Parker") appeals his sentence, arguing that it is procedurally unreasonable and violates his Fifth Amendment Equal Protection and Due Process rights. Finding no error, we **AFFIRM**.

## I.    Facts

From mid-2022 through the first half of 2023, Kalamazoo law enforcement received information from anonymous tipsters and confidential informants indicating that Parker was involved in drug sales. In response, beginning in May 2023, investigators conducted six controlled purchases of, in total, about 1.4 kilograms of methamphetamine mixture from Parker[1] (or

---

[1] On two occasions, Parker's associate delivered the drugs after a phone call with Parker.

969.7 kilograms of "actual" methamphetamine and 331.52 grams of methamphetamine mixture).[2]

Then, in July 2023, authorities intercepted a package addressed to Parker's girlfriend's address. After obtaining a search warrant for the package, investigators found about 1.3 kilograms of methamphetamine mixture in the package (or 1.2369 kilograms of actual methamphetamine). The investigation culminated on August 1, 2023, when law enforcement executed warrants authorizing searches of Parker's residence and vehicle and his girlfriend's residence. When state troopers pulled Parker over, they observed him throwing a black bag out of his vehicle's window. Parker admitted that the bag belonged to him and contained drugs; a laboratory later determined the bag contained about 1.3 kilograms of methamphetamine mixture (or 1.26 kilograms of actual methamphetamine). While in transit to jail, Parker volunteered to a state trooper that he expected a sentence of 15 years.

Based on Parker's possession of methamphetamine during his arrest on August 1, 2023, a grand jury indicted Parker under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) for knowingly and intentionally possessing with intent to distribute a mixture or substance containing a detectable amount of methamphetamine. Parker pleaded guilty to this charge without a plea agreement. The presentence report, which was not objected to by Parker and was accepted by the district court, considered not only the methamphetamine that Parker possessed on August 1, 2023, but also the methamphetamine amounts found in the intercepted package and acquired from the controlled purchases.

---

[2] "Actual" methamphetamine "refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual)." U.S. Sent'g Guidelines Manual § 2D1.1(c), n.(B).

For the three controlled purchases corresponding to the amount of 331.52 grams of methamphetamine mixture, the testing laboratory did not determine purity, and the amount of actual methamphetamine is therefore unknown.

Of particular significance to this appeal, in calculating the "converted drug weight" used to determine a defendant's base offense level, the Sentencing Guidelines treat methamphetamine mixture and actual methamphetamine differently. One gram of a mixture converts to two kilograms, but one gram of actual methamphetamine converts to 20 kilograms. U.S. Sent'g Guidelines Manual § 2D1.1, cmt. n.8(D). The Sentencing Guidelines further provide that in cases of methamphetamine mixture, courts should "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater." *Id.* § 2D1.1(c), n.(B). Based on these rules, Parker's 331.52 grams of methamphetamine mixture converted to 663.04 kilograms, and his 3.466 kilograms of actual methamphetamine converted to 69,332 kilograms. Because the sum of these converted drug weights fell between 30,000 and 90,000 kilograms, Parker's base offense level was 36. *Id.* § 2D1.1(c)(2). Other enhancements and reductions resulted in a total offense level of 35, which, together with Parker's criminal history category, produced a Sentencing Guidelines range of 292 to 365 months' incarceration. However, the statutory maximum of 240 months' incarceration capped Parker's potential sentence below this Sentencing Guidelines range. *See* 21 U.S.C. § 841(b)(1)(C).

In his sentencing memorandum and at his hearing, Parker sought a downward variance by urging the district court to treat him as a career offender dealing in methamphetamine mixture, which, after applying enhancements and reductions, would yield a total offense level of 31 and, correspondingly, a Sentencing Guidelines range of 188 to 235 months' incarceration.

The Sentencing Guidelines' tenfold increase for actual methamphetamine derives from the Anti-Drug Abuse Act of 1986, which itself provides for a ten-to-one difference in the mandatory minimums applicable to "methamphetamine" versus "a mixture or substance containing a

detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii), (B)(viii); *see also* U.S. Sent'g Guidelines Manual § 2D1.1 cmt. background (reflecting the Guidelines' connection to that Act). The Guidelines justify this tenfold increase as follows: "Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." U.S. Sent'g Guidelines Manual § 2D1.1, cmt. n.27(C) (also noting that an upward departure on this basis is unnecessary for methamphetamine cases because "the guideline itself"—*i.e.*, the tenfold increase—"provides for the consideration of purity").

As Parker noted below, some courts and commentators have concluded that because the methamphetamine trafficked by even low-level dealers has become increasingly pure, this presumption no longer holds weight. Parker argued to the district court that applying the tenfold increase for actual methamphetamine would therefore overestimate his position within the chain of distribution and fail to differentiate him from more serious offenders. The government, in response, highlighted Parker's criminal history and cited his role in transporting methamphetamine from out-of-state to dispute his allegedly low-level involvement in the distribution chain.

The district court acknowledged "its discretion in determin[ing] an appropriate sentence," considered the factors enumerated in 18 U.S.C. § 3553(a), explained that regarding the "purity versus mixture argument," it did not "have any policy disagreements with . . . the guidelines in these types of cases," and denied Parker's motion for a variance. R. 44, PageID 303, 305–10, 315. The court ultimately sentenced Parker to the statutory maximum of 240 months' incarceration.

## II.    Analysis

Parker asserts two claims on appeal:  His sentence is procedurally unreasonable because the district court treated the Sentencing Guidelines as mandatory; and the disparity between Parker's sentence and those for other similar offenders violates his Fifth Amendment rights.  We reject both positions and affirm the district court's judgment.

### A.  Procedural Unreasonableness

We review a claim of procedural unreasonableness for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Id.*  Here, Parker argues that "[d]espite the clear disparity [the actual-methamphetamine] approach creates among methamphetamine offenders, the court treated the Guidelines as mandatory and imposed an unreasonable sentence."  Appellant Br. 6.

District courts may vary from the Sentencing Guidelines based on policy considerations, such as disagreeing with their significantly different treatment of crack and powder cocaine.  *Kimbrough v. United States*, 552 U.S. 85, 101–02 (2007) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007)); *see also Spears v. United States*, 555 U.S. 261, 264–65 (2009) (confirming that district courts may vary from the crack-cocaine Guidelines based on not only an individualized, case-by-case determination, but also a categorical rejection).  And we have extended *Kimbrough*'s reasoning beyond the crack- and powder-cocaine context.  *United States v. Herrera-Zuniga*, 571 F.3d 568, 585–86 (6th Cir. 2009).

Although several district courts have rejected the tenfold increase for actual methamphetamine and have imposed reduced sentences on that basis, *e.g.*, *United United States v. Bean*, 371 F. Supp. 3d 46, 50–51 (D.N.H. 2019) (gathering cases); *States v. Rodriguez*, 382 F. Supp. 3d 892, 896–98, 896 n.24 (D. Alaska 2019) (gathering cases); *United States v. Nawanna*, 321 F. Supp. 3d 943, 951–54 (N.D. Iowa 2018), we have held, in a case like the present one, that notwithstanding these district court decisions, it is not procedurally unreasonable for a court to adhere to the Sentencing Guidelines for actual methamphetamine:

> The question for this court is not whether we might find any of those reasons [for rejecting the actual-methamphetamine Guidelines] persuasive—only whether it was an abuse of discretion for the district court to decide *not* to vary downward based on those policy disagreements. But "the fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) (emphasis in original); *see also United States v. Heim*, 941 F.3d 338, 341 (8th Cir. 2019) (refusing to compel policy disagreement with the methamphetamine Guideline just because other judges have done so). The district court did not abuse its discretion by choosing *not* to disagree with the 10:1 ratio in the Guidelines on policy grounds. *See United States v. Lynde*, 926 F.3d 275, 281 (6th Cir. 2019).

*United States v. Johnson*, 812 F. App'x 329, 334–35 (6th Cir. 2020). Thus, it does not follow that because the district court declined to reject the methamphetamine Guidelines, it must have believed those Guidelines to be mandatory.

Nor can we find any statements in the record indicating as much. Instead, the district court stated that "[t]he [G]uidelines are advisory to the Court" and "[t]he Court fully recognizes its discretion in determin[ing] an appropriate sentence." R. 44, PageID 303. The district court then acknowledged the "policy argument" regarding "the pure versus mixture differences in terms of

the [G]uidelines" and the need to "avoid sentencing disparities among similarly situated defendants." *Id.* at 305. After reviewing several of the § 3553(a) factors, the district court returned to the methamphetamine-Guidelines issue and stated that it "underst[oo]d the argument" but did not "have any policy disagreements . . . with the [G]uidelines in these types of cases." *Id.* at 310. And before imposing its sentence, the district court reiterated that it "look[ed] at all of the [§] 3553(a) factors in totality." *Id.* at 315. Accordingly, we find no support for Parker's claim that the district court treated the Sentencing Guidelines as mandatory.

Parker's claim also invokes "the clear disparity . . . among methamphetamine offenders" caused by the Sentencing Guidelines, Appellant Br. 6, seemingly raising another basis for procedural unreasonableness, *i.e.*, that the district court failed to consider the § 3553(a) factors and, in particular, the admonition to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6). In Parker's view, because methamphetamine purity is no longer a reliable proxy for culpability, low-level traffickers and kingpins alike receive sentences untethered to their role in the drug-trafficking enterprise.

But again, the record shows that the district court considered Parker's position and concluded that the Sentencing Guidelines adequately reflected Parker's culpability because Parker was *not* similarly situated with the lowest-level traffickers. When "looking at the variance motion," the district court expressly noted that it had "look[ed] at the [§] 3553(a) factors" and "consider[ed]" them, including for the purpose of "avoid[ing] sentencing disparities among similarly situated defendants." R. 44, PageID 304–05. In response to Parker's counsel's argument that Parker "pick[ed] up a relatively . . . modest quantity of narcotics" during a trip to Arizona, the district court questioned what constituted a "modest" amount and noted that Parker had procured

drugs from out-of-state sources more than once. *Id.* at 295–96. Finally, in surveying the § 3553(a) factors, the district court noted that numerous controlled buys of "large amounts of meth" occurred within "a very short period of time from May to July of 2023"; that Parker's multiple out-of-state trips to acquire narcotics reflected "activity" that "was pretty great and consistent during the time of this investigation"; that Parker's comments to police about a 15-year sentence indicated that "he was well aware of the seriousness of the amounts that he was dealing with"; and that Parker's criminal history was "quite troubling." *Id.* at 305–08, 310. Taken together, these statements indicate that the district court did not believe Parker to be a low-level trafficker and instead found the Sentencing Guidelines range to appropriately correspond to Parker's culpability.[3]

## B. Fifth Amendment Claim

Parker argues that because some district courts vary from the methamphetamine Guidelines while others do not, Parker received a harsher sentence than similarly situated defendants, which in turn violated his Fifth Amendment right to equal protection. We typically "review *de novo* constitutional challenges to sentences because these challenges present questions of law." *United States v. Layne*, 324 F.3d 464, 471 (6th Cir. 2003) (citing *United States v. Smith*, 73 F.3d 1414, 1417 (6th Cir. 1996)). But because Parker did not raise this argument below, the parties agree that we review for plain error. *See* Appellant Br. 13; Appellee Br. 14; *United States*

---

[3] Nor was it abuse of discretion for the district court to not be as explicit as it could have been in tying these statements to the conclusion that Parker differed from low-level traffickers. In a similar case involving the disparity between the crack- and powder-cocaine Sentencing Guidelines, we held that "the district court's decision not to address the party's [disparity] argument expressly is not an error when the court otherwise discussed the specific factor"—*i.e.*, § 3553(a)(6)—"and appears to have considered and implicitly rejected the argument," especially given that the district court understood the argument and its "ability to vary on the basis of a categorical disagreement with the crack Guidelines." *United States v. Simmons*, 587 F.3d 348, 362 (6th Cir. 2009).

*v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013).  Under that standard, "a defendant must show:  '(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'"  *United States v. Taylor*, 800 F.3d 701, 714 (6th Cir. 2015) (quoting *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010)).

As the government asserts, and Parker appears to agree in reply, a claim that a criminal penalty is "based on an arbitrary distinction" sounds in the Due Process Clause of the Fifth Amendment, and we must ask whether a "rational basis" exists for the prescribed penalty. *Chapman v. United States*, 500 U.S. 453, 465 (1991) (citing *Jones v. United States*, 463 U.S. 354, 362 n.10 (1983)); *see also United States v. Jiles*, 259 F.3d 477, 480 (6th Cir. 2001) ("[E]qual protection challenges to sentencing schemes are essentially the same as challenges based upon due process," and "challenged sentencing schemes must be upheld so long as they are not based on arbitrary or irrational distinctions that violate the Due Process Clause of the Fifth Amendment.").[4] Accordingly, Parker also argues that the Sentencing Commission and Congress[5] justified the tenfold increase for actual methamphetamine on a premise that no longer holds—*i.e.*, that purity is a proxy for a defendant's organizational role—thus rendering the distinction arbitrary or irrational.

Whatever the merits of Parker's claim, and we express no opinion on that issue, there was no plain error.  Although several district courts have varied from the methamphetamine Guidelines

---

[4] Parker does not argue that his claim warrants more than rational-basis review because, for example, he is part of a suspect class.

[5] Where the Sentencing Guidelines' ratio "merely tracks a similar ratio passed by Congress[,] . . . the appropriate inquiry is whether Congress was acting arbitrarily or irrationally in establishing" that ratio.  *United States v. Pickett*, 941 F.2d 411, 418 (6th Cir. 1991) (applying this reasoning to the different treatment of crack and powder cocaine).

due to policy disagreements, we are aware of no case in which a district or appellate court found the Guidelines *unconstitutional*. *See, e.g.*, *United States v. Wilkerson*, No. CR 2:16-00218, 2018 WL 3715744, at *3 (S.D.W. Va. Aug. 3, 2018) (noting that decisions like *Nawanna* do not "suggest that their policy disagreements with § 841's [and the corresponding Guidelines'] sentencing formula equates to [their] unconstitutionality"), *aff'd*, 808 F. App'x 171 (4th Cir. 2020); *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1254 (D.N.M. 2017) (holding that the district court could vary based on a policy disagreement without going so far as to find no rational basis).

The Eighth Circuit recently considered, under plain-error review, an argument nearly identical to Parker's and concluded that because no court—Supreme, circuit, or district—has declared the methamphetamine Sentencing Guidelines unconstitutional, any error by the district court "in not *sua sponte*" reaching that conclusion could not have been *plain* error. *United States v. Lugo-Barcenas*, 57 F.4th 633, 638 (8th Cir.) ("The question [the defendant] raises is perhaps novel, but it does not give rise to a clear or obvious answer in his favor."), *cert. denied*, 144 S. Ct. 143 (2023). We agree. Where the law is unclear, any error is not "plain." *United States v. Price*, 901 F.3d 746, 751 (6th Cir. 2018).

\* \* \*

For the above reasons, we **AFFIRM**.