NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0759n.06

Case No. 15-3124

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 18, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES |
| | ) | DISTRICT COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| JUAN PORTILLO, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** A jury found Juan Portillo guilty of conspiracy to distribute cocaine and heroin. Based on a prior felony drug conviction, Portillo received a mandatory-minimum sentence of 240 months of imprisonment. Portillo now challenges both the admission into evidence of his prior felony drug conviction and the application of an obstruction-of-justice enhancement during sentencing. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

**A.     Factual background**

In August 2014, the government indicted Portillo on a charge of conspiring to distribute at least five kilograms of cocaine and one kilogram of heroin. The evidence at trial established that Portillo, a resident of Chicago, was supplying cocaine and heroin to Alexander Abreu in Cleveland. Abreu, in turn, was delivering a portion of those drugs to Richard Price on

consignment. Price was then selling the drugs to consumers and lower-level drug dealers. Both Abreu and Price entered into plea agreements and cooperated as government witnesses during Portillo's trial.

Of the trio, Price was the first to come to the attention of law enforcement. The Drug Enforcement Agency (DEA), working off a tip from an informant, began surveillance of Price's residence and engaged in several controlled drug purchases from Price at that address. After setting up a pen register and a wiretap on Price's cell phone, the DEA started to suspect that Abreu was supplying the drugs to Price. In his trial testimony, Price confirmed this arrangement and detailed that he would receive cocaine and heroin from Abreu and then "sell it to numerous people."

The DEA subsequently obtained a wiretap on Abreu's phone. As a result of this wiretap, the DEA intercepted several calls between Abreu and Portillo in which they discussed drug transactions. Abreu later testified that Portillo would drive from Chicago to Cleveland to sell him cocaine and heroin, which he would resell to Price. A phone call between Abreu and Price on June 26, 2012 revealed that Abreu was sending "the Old Man" (later identified as Portillo) to Price so that Price could pay Portillo directly for certain drugs that Price had received. During DEA surveillance of Price's residence on that same day, a Mercedes with license plates registered to Portillo arrived. The DEA observed a hand-to-hand transaction in which Portillo received $200 from Price for drugs that Portillo had previously delivered to Abreu.

**B.      Government's motion in limine and Portillo's testimony**

After the government rested its case and before the defense's case began, the government moved in limine to impeach Portillo with two prior felony convictions if he decided to testify.

The district court rejected the government's request to introduce evidence of a 2014 conviction for being a felon in possession of a firearm because Portillo had not yet been sentenced. The court, however, ruled that the government could introduce evidence of a 2002 conviction for the manufacture and delivery of cocaine. A certified copy of this cocaine conviction from the Circuit Court of Milwaukee County, Wisconsin shows that Portillo pleaded guilty to that charge on March 11, 2002. On April 15, 2002, the state court sentenced Portillo to 48 months of imprisonment, divided into 20 months of confinement and 28 months of extended supervision, and granted 51 days of credit for time served. The government argued that the 48 months of imprisonment brought the state cocaine conviction within the 10-year window that would allow Portillo to be impeached with this conviction under Rule 609 of the Federal Rules of Evidence. Countering the government, defense counsel asserted that the documentation failed to indicate whether Portillo had actually served the 28 months of extended supervision. Defense counsel contended that, if Portillo had not served the 28 months of extended supervision, then Portillo's state cocaine conviction would fall outside the 10-year window. He conceded, however, that the conviction would fall within the window if Portillo had served the extended supervision.

The district court, after reviewing a report from Pretrial Services, concluded that the government could impeach Portillo with his state cocaine conviction if he testified. In reaching this decision, the court explained that "the best evidence that we have indicates that he was under supervision within ten years of the, you know, of the testimony today." Other than this statement, the court made no findings regarding the admissibility of the state cocaine conviction. Defense counsel then informed the court that he "intend[ed] to obviously voir dire [Portillo] on

[the state cocaine conviction] before the Government gets its chance." The court declared that it would "note the motion in limine and [that] the objection is continuing."

Portillo then took the stand and, in replying to a question by defense counsel during direct examination, acknowledged his state cocaine conviction. In response to a question on cross-examination from the government, Portillo confirmed that his state cocaine conviction was a felony.

With respect to the allegations against him, Portillo testified that he had never conspired with Abreu or Price to distribute drugs. He declared that he had never brought any drugs into Cleveland for Abreu and that he had visited Abreu only to provide Abreu with spiritual guidance in the Santeria religion, in which Portillo was a priest. Any payments that Portillo received from Abreu were allegedly derived solely from services he provided Abreu in this spiritual capacity. Portillo also denied ever having met or spoken to Price. In particular, he denied ownership of the car in which he was observed receiving a drug payment from Price, saying: "That's not my car. If that is not my car, it can't be my hand either." Portillo admitted that the car had his license plate, but he insisted that it was not his car.

In November 2014, the jury found Portillo guilty of conspiracy to distribute at least five kilograms of cocaine and at least one kilogram of heroin. The court then scheduled Portillo's sentencing for February 2015.

## C.    Sentencing

At his sentencing hearing, Portillo objected to the recommendation in the Presentence Report for a two-level increase for obstructing justice. The district court overruled the objection because Portillo had provided false testimony "going to a central part of the case." Portillo's

offense level therefore increased from 30 to 32 with the application of the obstruction-of-justice enhancement.

Combined with Portillo's criminal history, an offense level of 32 equated to a Sentencing Guidelines range of 151 to 188 months of imprisonment. The court, however, sentenced Portillo to 240 months of imprisonment. This sentence exceeded the calculated Sentencing Guidelines range, but did not exceed the mandatory-minimum sentence of 240 months of imprisonment that was triggered by a 21 U.S.C. § 851 enhancement for Portillo's prior felony drug conviction. This timely appeal followed.

## II. ANALYSIS

### A. Standard of review

With regard to Portillo's objections on appeal to the district court's ruling on the government's motion in limine, we review the ruling under the plain-error standard because defense counsel objected at trial only on the grounds that the evidence did not demonstrate that Portillo had served the period of extended supervision. Defense counsel did not object below to either the court's implicit conclusion that "extended supervision" could constitute confinement under Rule 609 or the court's failure to balance the probative value of Portillo's state cocaine conviction against its prejudicial effect—the two arguments that Portillo raises on appeal. When a defendant objects to a Rule 609 decision on grounds different than those raised at trial, we review the district court's ruling under the plain-error standard. *United States v. Kemp*, 546 F.3d 759, 763 (6th Cir. 2008).

With regard to Portillo's sentencing claim, we review the district court's factual findings underlying its decision to impose an obstruction-of-justice enhancement under the clear-error

standard. *United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007). We review de novo the district court's conclusions as to what facts constitute an obstruction of justice. *Id.* But a procedural sentencing error, such as a miscalculation of the Sentencing Guidelines range, "is not subject to remand for resentencing if the error is harmless." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014).

**B.      Portillo is foreclosed from challenging the admission of his state cocaine conviction**

Portillo raises two objections to the district court's ruling on the government's motion in limine regarding his state cocaine conviction. First, Portillo argues that the court erred in determining that a period of "extended supervision" constituted confinement for purposes of the 10-year time limit on using Portillo's prior conviction for impeachment purposes under Rule 609(b). Second, Portillo contends that the court violated Rule 609 by "fail[ing] to conduct any on-the-record finding . . . balancing the probative value and prejudicial effect of permitting the government to impeach Portillo on his prior conviction."

We need not address the merits of these claims, however, because the Supreme Court's decision in *Ohler v. United States*, 529 U.S. 753 (2000), forecloses Portillo from challenging the admission of his state cocaine conviction into evidence when that conviction was elicited during his direct examination. *See id.* at 760 ("[W]e conclude that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error."); *see also United States v. Gunter*, 551 F.3d 472, 483–84 (6th Cir. 2009) (noting that *Ohler* found no constitutional violation under such circumstances).

*Ohler*'s facts are strikingly similar to the present case. Defense counsel for both Ohler and Portillo objected to the introduction of the defendant's prior conviction as impeachment

evidence if the defendant testified. *Ohler*, 529 U.S. at 762 (Souter, J., dissenting). Both trial judges ruled, following a motion in limine, that the government could impeach the defendant with a prior conviction if the defendant testified. *Id.* at 755. In both trials, defense counsel brought out the defendant's prior conviction during the direct examination before the government could elicit the conviction on cross-examination. *Id.*

One potentially distinguishing fact in the present case is that the district court "note[d] the motion in limine and [that] the objection is continuing" after defense counsel informed the court that he "intend[ed] to obviously voir dire [Portillo] on [the state cocaine conviction] before the government gets its chance." But this is a distinction without a difference. Any "continuing" objection by defense counsel would be an objection to the district court's ruling on the motion in limine, which allowed the state cocaine conviction to come into evidence if Portillo testified. Thus, as in *Ohler*, Portillo's defense counsel objected to a ruling on a motion in limine that allowed admission of Portillo's prior conviction if he took the stand. And, as in *Ohler*, the prior conviction was elicited on direct examination. Portillo, like Ohler, is therefore foreclosed from challenging the admission of his prior conviction during trial.

A second potentially distinguishing fact is that, unlike in *Ohler*, the government asked Portillo a question on cross-examination regarding his state cocaine conviction. But this does not impact *Ohler*'s controlling weight. The government asked a simple question on cross-examination to clarify that the conviction that Portillo first referenced during direct examination was a felony. Because defense counsel had already opened the door by eliciting the state cocaine conviction during direct examination, the government had the right to ask a clarifying question on that topic during cross-examination. *See United States v. Bender*, 265 F.3d 464, 470–71 (6th

Cir. 2001) (concluding that the district court did not err "in allowing the government to cross-examine [the defendant] regarding the nature of her prior conviction" because "'[w]hen a party opens up a subject . . .[, she] cannot complain on appeal if the opposing party introduces evidence on the same subject'" (quoting *United States v. Ramos*, 861 F.2d 461, 468–69 (6th Cir. 1988))).    Accordingly, because the present case is materially indistinguishable from *Ohler*, Portillo's challenge to the introduction of his prior cocaine conviction into evidence is without merit.

## C.     Portillo's sentencing enhancement, even if erroneous, was harmless

Portillo also challenges the district court's imposition of a two-level increase to his Sentencing Guidelines range for obstructing justice, arguing that the court failed to "explicitly determine whether Portillo willfully intended to provide false testimony."    Even assuming, without deciding, that the court erred in imposing this two-level increase, any error was harmless.    As previously stated, a procedural sentencing error, such as a miscalculation of the Sentencing Guidelines range, "is not subject to remand for resentencing if the error is harmless." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014).    "Sentencing errors are harmless where this court is convinced that the error at sentencing did not cause the defendant to receive a more severe sentence than would have existed without the error."    *Id.* (internal quotation marks omitted).

With the two-level enhancement for obstructing justice, Portillo's Sentencing Guidelines range was 151 to 188 months of imprisonment.    Even the top end of this range, however, is below the 240-month mandatory-minimum sentence that Portillo received.    Portillo does not raise any objections on appeal to the application of the mandatory minimum, and he admits that

the sentence he received "far exceeds the sentencing range that [he] would have faced after being found by the court to have 'obstructed justice.'"  Because of the applicability of the 240-month mandatory minimum, Portillo's sentence therefore could not be reduced even if we concluded that the district court inappropriately imposed the obstruction-of-justice enhancement.  Portillo's claim accordingly fails because any error, even assuming one occurred, was harmless.

### III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.