NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0160n.06

No. 17-5713

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 28, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GEORGE WARD, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MERRITT and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

CLELAND, District Judge. After police found six thousand prescription pills—including morphine, amphetamine, and methadone—in a room in Jackson, Tennessee he had recently occupied, Defendant George Ward was indicted, tried, and convicted by a jury of seven counts of possession of controlled substances with the intent to distribute. *See* 21 U.S.C. § 841(a)(1). (R. 2, Pg. ID 6–9; R. 112, Pg. ID 244). Ward raises four claims on appeal: (1) the sufficiency of the evidence supporting his convictions, (2) the prejudicial comments in the prosecutor's closing argument, (3) the admission of his prior felony convictions, and (4) cumulative error. We affirm.

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

Ward first argues that the evidence presented at trial was insufficient to sustain his convictions.

Pursuant to a search warrant, police officers searched the Jackson, Tennessee residence of Wanda and Arion McKinnie for evidence relating to the illegal distribution of prescription pills. (R. 117, Pg. ID 320, 325–26; R. 118, Pg. ID 438–40). The search quickly focused on the bedroom where Ward had recently been staying (one in which Ward had stayed periodically over the past several years). (R. 118, Pg. ID 472–74). Among other items, police found three bags containing seven kinds of pills in various types and quantities of packaging. They also found other indicia of drug trafficking—including a drug ledger and prepaid cell phones—and numerous personal effects belonging to Ward—including mail, receipts, a parole calendar, a framed parole certificate, his laptop, and other paperwork. (R. 117, Pg. ID 330–32, 336, 351–52, 355–56, 360, 367–69, 371–73, 404). In total, the officers found over six thousand controlled substance pills in the bedroom. (R. 118, Pg. ID 506). No other part of the house yielded narcotics or trafficking paraphernalia. (R. 117, Pg. ID 328–29). The McKinnies denied possession of the pills, the ledger, and the bags, and Wanda McKinnie testified she saw defendant with at least one of the bags police later found to contain pills. (R. 118, Pg. ID 475–79, 498–500).

We review sufficiency of the evidence claims de novo, asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original). In so doing, we draw "all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the

judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (internal quotation omitted). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015) (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). We may sustain a conviction based on circumstantial evidence alone; the evidence need not disprove every hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

To sustain a conviction under 21 U.S.C. § 841(a), the government must prove the defendant (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute. *United States v. Ham*, 628 F.3d 801, 807–08 (6th Cir. 2011). Ward's challenge is narrow. He does not contest that police found thousands of prescription drugs, packaging, and other drug distribution paraphernalia in the bedroom where he was staying. Nor does he contest that this evidence was indicative of drug trafficking. (Def's Br., 12). He instead claims the evidence presented at trial insufficiently linked *him* to these items. Viewing the evidence in the light most favorable to the government, we disagree.

There was overwhelming evidence indicating Ward constructively possessed the pills. Ward had recent dominion over the bedroom where the police found not just the pills and distribution materials, but also his personal belongings. *See, e.g.*, *United States v. Gibbs*, 182 F.3d 408, 424–25 (6th Cir. 1999). In the face of such indicia of possession, Ward suggests an alternative: he was merely a "passing visitor," and the McKinnies—two individuals with

whom he felt a "mother/father relationship" (R. 118, Pg. ID 572)—must have planted the pills in the bedroom. (Def's Br., 13–17). Ward highlights his own testimony, where he disavowed possession of the pills and claimed the bags containing the pills were neither his nor in the bedroom when he left the house prior to his arrest. (R. 118, Pg. ID 583–84, 589–90; Def's Br., 13–16). He then notes that the McKinnies were in the house at the time of his arrest (which occurred just outside), and they—along with Ward—were listed on the affidavit prepared in support of the search warrant as being observed possessing pills. (R. 117, Pg. ID 325–27; R. 118, Pg. ID 440). Given this, and the government's lack of forensic testing of the evidence, Ward surmises that "the McKinnies had sufficient time to move any narcotics in their home to the bedroom in which Mr. Ward had slept, and they had plenty of motive for so doing." (Def's Br., 15–16).

Ward, in other words, challenges the McKinnies' credibility, attributing to them a motive to frame Ward for possession of narcotics that were actually theirs. But attacks on witness credibility are challenges to the *weight* of the government's evidence, not its sufficiency. *United States v. Taylor*, 800 F.3d 701, 712 (6th Cir. 2015). The weight of the government's evidence is "a factual matter for the jury to evaluate." *Id.* (quoting *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999)).

And this alternative possession hypothesis is one Ward presented to the jury (R. 118, Pg. ID 448–49, 626–27), and one it clearly rejected. It is not our role to make credibility determinations when it comes to assessing sufficiency of the evidence challenges. "We can neither independently weigh the evidence, nor make our own assessment of the credibility of the witnesses who testified at trial." *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). "It is for [jurors] and not for appellate courts, to say that a particular witness spoke the truth or

fabricated a cock-and-bull story." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985) (alteration in original) (quoting *United States v. Bailey*, 444 U.S. 394, 414–15 (1980)). We are to "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)).

Given the evidence presented and Ward's "heavy burden" to overcome the jury's verdict, *Callahan*, 801 F.3d at 616, we hold that a "rational trier of fact could have found the essential elements of [Ward's] crime[s] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

II.

Ward next claims that several statements made by the prosecutor during her closing remarks denied him a fair trial. (Def's Br., 19–24).

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Jackson*, 473 F.3d 660, 670–71 (6th Cir. 2007) (alteration original) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). We thus "afford wide latitude to a prosecutor during closing argument, analyzing disputed comments in the context of the trial as a whole and recognizing that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.'" *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (citing *United States v. Young*, 470 U.S. 1, 11 (1985)); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012).

In our two-part test for determining whether prosecutorial misconduct warrants reversal, we examine (1) whether the prosecutor's remarks were indeed improper and, if so, (2) whether

they were flagrant. *United States v. Eaton*, 784 F.3d 298, 309 (6th Cir. 2015). "We consider four factors in determining whether a statement was flagrant: (1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused." *Henry*, 545 F.3d at 376.

When a defendant objects to the alleged prosecutorial misconduct, our review is de novo. *United States v. Stover*, 474 F.3d 904, 914 (6th Cir. 2007). Unchallenged misconduct, however, is reviewed for plain error. *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996). Under plain-error review, a defendant is required to show that: (1) an error occurred in the district court, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Kingsley*, 241 F.3d 828, 835 (6th Cir. 2001). We will reverse "only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *Collins*, 78 F.3d at 1039 (internal quotations omitted).

First, Ward claims the prosecutor misled the jury by mischaracterizing Ward's transient nature, implying that he used different addresses to "avoid law enforcement" and that Ward "travel[ed] around to all of these addresses with his moving pharmacy with all these pills in [the bags]." (R. 118, Pg. ID 617, 633; Def's Br., 20–22). Ward having failed to object to these statements, we review for plain error and find none. *Id.* Simply put, the record evidence amply supported the prosecutor's suggested inference linking Ward's (in his words) "constant[] moving around" to his drug distribution activities. (R. 118, Pg. ID 594–95). The jury heard testimony about Ward using five different addresses, the portable nature of the trafficking evidence found in the bedroom, and how drug distributors "use multiple addresses" to avoid detection. (R. 117,

Pg. ID 330–32, 336, 351–52, 355, 360, 367, 369, 371–72, 402, 404; R. 118, Pg. ID 594–95). On

plain-error review, there was nothing improper about the prosecutor's statement.

Second, Ward maintains the prosecutor improperly inflamed the jury's passions by

appealing to the preservation of community values. (Def's Br., 22–23). The prosecutor

commented:

> You hear all the time that people say, when are they going to do something? When are they going to step up and do something about the drugs that we have here?
>
> Well, for George Ward, today, that is what this process is.

(R. 118, Pg. ID 622–23). She then commented about how various community members "did

their job" with respect to defendant:

> What [w]e know is that JPD, Captain Kemper, he and his guys did their job. They had information about George Ward. They went and sought a search warrant, which they were able to get. They went out there and ran that search warrant. They did everything they could do. They're here today. They processed and kept the evidence.
>
> We know Judge Allen signed the search warrant that got presented to him. He made a determination to sign off on the warrant. So he did his job.
>
> We know that Wanda and Arion McKinnie, this is one of their family friends. They would hate to have be involved with. We know that they gave a written statement at the time. They were cooperative. They're listed as witnesses. We know they showed up at Grand Jury. They came up here all day yesterday. Came up here again today to testify for y'all. They did their job.
>
> We know that the DEA and Metro Narcotics, they helped process the pills. They helped get those where they go and helped with this investigation. They did their job.
>
> We know that the DEA crime lab, you heard the two scientists, they testified to all this evidence. They came in here to tell you about what those results were.
>
> I brought this case to trial and tried to do my job the best I could, to present this evidence in a way that you guys could follow it and that would be helpful for you in making your determination.

(*Id.*, Pg. ID 623–24). The prosecutor then concluded:

> So right now the only thing left is you guys [sic]. *You are the [*"*]they[*"*] for George Ward*. The government is asking you to tell him, just say no to drugs.

> Just say no to him. You're not going to allow it. You know he was breaking the law and he was doing it in his family/friends house, trying to avoid from police trying to put them in a bad situation. And while he was on parole he was doing those things. So you guys know that. And I'm asking you to go back there and find him guilty as charged.

(*Id.*, Pg. ID 624) (emphasis added). Ward contends this "you are the they" conclusion "was made for the purpose of inflaming the jury's passions and incorrectly burdening them with the duty to fix society's problems." (Def's Br., 22–23). Because he again failed to object to this statement, we apply the plain error lens. *Collins*, 78 F.3d at 1039.

A prosecutor may not "pressur[e] the jury to help the government" achieve its goal of bringing the defendant to justice. *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). We have thus commented that statements "that exhort the jury to 'do its job' are improper." *Id.* (citing *United States v. Young*, 470 U.S. 1, 18 (1985)). So are comments suggesting "the drug problem facing the jurors' community would continue if they did not convict" the defendant. *United States v. Solivan*, 937 F.2d 1146, 1153 (6th Cir. 1991) ("It is error for a prosecutor to direct the jurors' desires to end a social problem toward convicting a particular defendant.").

Here, the prosecutor's comments toed the line. In describing the jury as the "they" for Ward, the prosecutor could be seen as calling on the jury to be the "they" who would "step up and do something about the drugs that we have here." And in invoking all the officers and witnesses who "did their job," the prosecutor implied to the jurors that it was now their job to finish the work of bringing Ward to justice.

To call on a jury's sense of civic duty—to imply that it is their duty to convict—is improper. This rule is not one of recent vintage. Fully seventy-five years ago, and long before *Young*, 470 U.S. 1, the Supreme Court admonished that "[a] prosecutor must draw a careful line" and that "he should be fair; he should not seek to arouse passion or engender prejudice." *Viereck v. United States*, 318 U.S. 236, 253 (1943). In that context, the Court disapproved of an

argument suggesting that the jury had "a [wartime] duty to perform." The prosecutor identified himself as "a representative of your Government" and "call[ed] upon every one of [the jury] to do your duty." *Id.* at 247 n.3. This "civic duty" argument is a species of prosecutorial irrelevancy that can too often verge into significant prejudice to a defendant. "Because the jury will normally place great confidence in the faithful execution of the obligations of a prosecuting attorney," irrelevancies of this sort "are apt to carry more weight against a defendant than such statements by witnesses." *Solivan*, 937 F.2d at 1150.

Here, the prosecutor closely approached the line of impropriety, but she managed to avoid crossing it. She concluded by urging the jury only to "tell him . . . no to drugs" and to say with a verdict that "[y]ou're not going to allow it." She avoided repeating in her final comment any reference to "doing its job" or any supposed duty to convict; she appropriately asked the jury to "go back there and find him guilty as charged."

But, even if we were to stipulate that an emotion-laced argument was improper as delivered here, we find no flagrancy. *Eaton*, 784 F.3d at 298. It seems likely that this statement served to prejudice the defendant, *see Solivan*, 937 F.2d at 1152, and that it was deliberate rather than accidental. However, this was also an isolated statement at the end of the prosecutor's closing argument. And, as noted above, there was ample evidence of Ward's guilt. As such, the prosecutor's conclusion does not qualify as an "exceptional circumstance[] . . . where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *Collins*, 78 F.3d at 1039 (internal quotations omitted).

Finally, Ward claims the prosecutor saved her "most prejudicial remarks"—remarks that Ward did object to—for rebuttal. There, the prosecutor commented about Ward's apparent lack

of respect for individuals and institutions, and more specifically, his lack of respect for the jury

for denying his role as a drug distributor:

> George Ward doesn't respect, he doesn't respect the law. He breaks the law. He intentionally and knowingly possessed all that with the intent to deliver it. He doesn't respect that at all.
>
> He doesn't respect his friends. Arion and Wanda McKinnie, that let him stay there when he wants to and try to help him out and open their door to him when she's a hard working person and he's disabled, he doesn't respect them. He takes that garbage into their house.
>
> A search warrant gets drawn up with them as the targe[t] because he's at their house at that location. He does not respect them at all.
>
> He doesn't respect the community by putting these items out there. Everybody is aware of what the dangers are from narcotics, from these pills. You hear it all the time, about the controlled substances. No respect at all. No respect for the police. Keeping these extra phones. Keeping all these addresses. Carrying all these things on the go because it's harder to track him down, because he thinks he can get out of it that way.
>
> *He doesn't respect that. And he doesn't respect you. To get up there and lie* [*to*] you. He can't even admit his addresses, how many bags he had --
>
> > [Defense Counsel]: Your Honor.
> >
> > THE COURT: Wait, wait.
> >
> > [Defense Counsel]: Your Honor, I'm objecting to this. The statement that he doesn't respect the jury. What basis does she have --
> >
> > THE COURT: Let's move on. Okay. Let's just move on.
> >
> > [Prosecutor]: *The testimony by Mr. Ward should insult your intelligence, because you can judge his credibility. And I am asking you to go back there and teach him some respect.* Go back there and find him guilty of what you know he did.

(*Id.*, Pg. ID 635–36) (emphasis added). Ward claims the prosecutor's commentary on his lack of

respect for the jury was solely an attempt to inflame its passions. He also argues that the

prosecutor's insinuations about his lack of respect for the law were "a veiled reference to Mr.

Ward's prior criminal history." (Def's Br., 23–24). We disagree, no matter under de novo

review for the former, or plain-error review for the latter.

-10-

In response to the prosecutor's closing statement, Ward's attorney made a direct appeal to the jury: that based on the physical evidence presented, they should believe Ward's version of the events over the McKinnies'. (R. 118, Pg. ID 627–31). We must look at this context when examining whether the prosecutor's rebuttal amounted to improper conduct. *See, e.g.*, *Young*, 470 U.S. at 11–12. Viewed through this responsive lens, the prosecutor's comments about Ward not "respecting" the jury were a proper reply to Ward's invited credibility critique.

Nor do we find that the prosecutor's comments about not respecting the law were improper, let alone flagrant. While disfavored, "arguments that invite the jury to 'send a message' to the defendant . . . do not 'cross the line into prosecutorial misconduct.'" *Modena*, 302 F.3d at 635 (quoting *United States v. Reliford*, 58 F.3d 247, 251 (6th Cir. 1995)). And while Ward styles the comment about his lack of respect for the law as a "veiled reference" to his prior criminal history, he ignores the context provided by the prosecutor's immediate follow-up: "He intentionally and knowingly possessed all that with the intent to deliver it." With this context, and given the fleeting nature of the comment and the evidence of Ward's guilt, this statement was not flagrant.

### III.

In his third claim of appeal, defendant contends the district court erred "in allowing the prosecution to question Mr. Ward about his prior convictions." (Def's Br., 1, 24–29). *Ohler v. United States*, 529 U.S. 753 (2000), allows us to make quick work of this contention. Following a ruling in advance of her testimony that the government could impeach her under Federal Rule of Evidence 609 on the basis of a felony drug conviction, Ohler testified on direct examination about the prior conviction. *Id.* at 755. She then sought to challenge the district court's ruling allowing the government to use her prior conviction for impeachment purposes. *Id.* The

Supreme Court held she could not: "[A] defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Id.* at 760.

So too here. In advance of Ward's testimony, the district court said it would allow the government to impeach him on the basis of two felony drug convictions under Federal Rule of Evidence 609. (R. 118, Pg. ID 535–36). Ward sought to avoid the sting of the impeachment by testifying about his convictions before the government could cross examine him. (*Id.*, Pg. ID 586–87, 591–92). He now wishes to appeal the district court's pre-testimony ruling. (Def's Br., 1, 24–29). *Ohler* forecloses this claimed error. *See also United States v. Portillo*, 630 F. App'x 594, 598–99 (6th Cir. 2015).

## IV.

Finally, Ward's cumulative error argument has no merit because "cumulative-error analysis is not relevant where no individual ruling was erroneous." *United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011) (quoting *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009)).

## V.

The judgment of the district court is AFFIRMED.